```
             UNITED STATES DISTRICT COURT
               DISTRICT OF CONNECTICUT
```

RUSSELL PEELER,                  :

    Plaintiff,               :

V.                               : CASE NO. 11-CV-327 (RNC)

JEFFREY MCGILL, et al.,          :

    Defendants.              :

<u>RULING AND ORDER</u>

Plaintiff Russell Peeler, an inmate at Northern Correctional Institution ("NCI"), brings this action pro se under 42 U.S.C. § 1983 against Captain Scott Salius and Correctional Officers (COs) Robert Mihaliak, Wilbur Strozier, Steven Viera, Anthony Chukwurah and D. Hovanec claiming they were deliberately indifferent to a threat to his safety in violation of the Eighth Amendment. The defendants have moved for summary judgment on the grounds that the plaintiff failed to exhaust his administrative remedies and cannot establish a constitutional violation. I agree that the plaintiff's failure to exhaust administrative remedies bars the suit and therefore grant the motion without addressing the Eighth Amendment claim.

I. <u>Background</u>

The parties' submissions show the following. On May

14, 2008, the plaintiff was assaulted by Daniel Webb, an inmate housed in a cell next to the plaintiff's cell on death row at NCI.  Two weeks before the assault, Webb complained to Captain Salius about the plaintiff and asked that the plaintiff be moved to another part of the unit.  Salius prepared a written report of his conversation with Webb.  See Pl.'s Ex. A (ECF No.55-4).  Th report states that when Salius told Webb the plaintiff would not be moved, Webb replied: "that's OK, I will handle this another way."  Id. Salius noted that unit staff had informed him that the plaintiff and Webb argued constantly.  Id.  The report concluded:

> By directive and post order the inmates are to be moved by themselves and are not to have any contact with each other.  I informed staff to use diligence when dealing with these individuals and to ensure that all procedures are being followed.  I also verbally informed staff and placed a[] note on the housing unit board to ensure that the cell doors are being pulled on to ensure they are secure after either inmate returns to the cell.  Staff were informed to ensure that the inmates are placed into different recreation yards during their rec period to safeguard against fluid assaults.

Id.

On the day of the assault, Webb used his cell intercom to call CO Mihaliak, the duty officer responsible for opening and closing doors throughout the unit, to ask if he

2

could take a shower. Mihaliak opened Webb's cell door and Webb walked to the shower unescorted. When Webb signaled that he was done showering, Mihaliak pressed a control button to release him from the shower. Webb walked unescorted into his own cell, number 125, exited his cell and stood in front of plaintiff's cell, number 124. Webb then signaled for cell 124 to be opened, and Mihaliak opened the door. Webb rushed into the cell, threw plaintiff out and began attacking him with his fists, shouting "run your mouth now." Mihaliak called a Code Blue, and, after approximately twenty seconds, responding staff arrived to separate the inmates. Plaintiff was taken to the emergency room where he was treated for injuries to his head and face.

The incident was investigated by the Security Division. A report of the investigation filed May 30, 2008, concluded that Mihaliak had allowed Webb out of his cell without a staff escort and inadvertently opened the plaintiff's cell. These actions were contrary to prison directives requiring "staff to use extreme caution when dealing with Death Row Inmates" and to escort such inmates "to and from any in-unit activities such as recreation, showers, or phone calls." See Pl.'s Ex. D (ECF No. 55-4) at 6. As a result, Mihaliak

was disciplined with a one-day suspension.

On June 11, 2008, plaintiff filed a Level 1 grievance. In the section of the grievance form instructing inmates to state the problem and the resolution requested, plaintiff inserted the following:

> Due to the fact I have a 30 day deadline that is about to expire and my FOI request of the total incident reports have been delayed, I can't give names of all staff that was working during the attack on May 14, 2008. . . . On May 14, 2008 I was in my bed in 1 East Area cell 124 and I was attacked by Daniel Webb he was let in my cell by the CO that was working the bubble. . . . If COs were out escorting Daniel Webb and if the CO in the bubble wouldn't allowed Daniel Webb in my cell or if the block COs were attentive they could have assisted me with my protection. Deputy Warden Rodriguez told me today again while on 1 East that the material I requested aren't ready for the incident that happen on 4-14-08.

Pl.'s Ex. J (ECF No. 55-4) at 1.

The record includes a letter dated July 10, 2008, from the law firm Fernandez & Romano, P.C., informing the Commissioner of the Department of Correction that the firm was representing the plaintiff. The letter stated:

> On or about May 14, 2008, Mr. Peeler was attacked by another inmate while he was sleeping in his locked cell. Mr. Peeler filed a timely grievance regarding this attack and to this day has not received a response. This letter should serve to exhaust [plaintiff's] administrative remedies under the Prison Litigation Reform Act for the assault described above.

Pl.'s Ex. G (ECF No. 55-4).

4

The record also includes an email dated July 11, 2008, from District Administrator ("DA") Wayne Choinski to Tracy Hartshorn, apparently prompted by the Fernandez & Romano letter.  The email states: "Find out from NCI if [plaintiff] filed a grievance regarding the fight with Webb on May 14th.  I need a copy.  Also, did he file a [Level 2 appeal] with us on this?"  Pl.'s Ex. I (ECF No. 55-4).  Handwritten on the printed copy of the email is an unsigned note stating: "Attached is the Level 1.  Peeler has not filed a Level 2 to date.  However, his Level 1 was only responded to on Friday 7/11/08.  Certainly a Level 2 will be forthcoming."  Id.

The disposition of plaintiff's Level 1 grievance, dated July 11, 2008, states, "[plaintiff's] grievance regarding staff conduct is compromised.[1]  This incident is currently under investigation. . . . This matter may be appealed to DA Choinski."  Pl.'s Ex. J (ECF No. 55-4) at 2.[2]  On July 14, 2008, plaintiff filed a Level 2 appeal from this decision.

---

[1] "Compromised" means that "the application for administrative remedy has sufficient merit that some modification of the existing decision is warranted."  See Connecticut Department of Correction Administrative Directive 9.6(3)(C) (2012).

[2] It is undisputed that this Level 1 decision was timely, as it was issued within thirty business days of the receipt of the grievance as provided by Department of Correction Administrative Directive 9.6(6)(I).

5

The appeal stated: "I am appealing this because if the COs were following policy and procedure on May 14, 2008 I wouldn't have been attacked and my safety and security is at risk still."  Pl.'s Ex. K (ECF No. 55-4).

On July 24, 2008, Choinski denied the appeal using a standard form.  In the space for the decision, Choinski inserted the following statement:

> You are appealing a level 1 grievance concerning an FOI request.  Please be advised that FOI is a non-grievable matter.  However, my office has been advised that you have received notice from D/W Rose that the documents requested are now available.  With regards to the 05/14/08 incident, you are vague in the action requested.  You may submit a new grievance outlining the problem and requested resolution.

Id.  Below this statement, a check mark was inserted in a box stating, "You have exhausted the Department's Administrative Remedies."  Id.  Plaintiff did not file a second grievance.  See Pl.'s Rule 56(a)(2) Statement (ECF No. 55-2) at ¶ 35.

Approximately two and a half years later, plaintiff filed this suit alleging that the defendants were deliberately indifferent to his safety in violation of the Eighth Amendment in that CO Mihaliak allowed Webb out of his cell unescorted and granted him access to plaintiff's cell; COs Strozier, Viera, Chukwurah and Hovanec failed to escort

Webb to and from his cell; and Captain Salius as unit manager failed to supervise his officers and failed to take action to separate the plaintiff and Webb prior to the attack.

II. Summary Judgment

Summary judgment may be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). To avoid summary judgment, the plaintiff must point to evidence that would permit a jury to return a verdict in his favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). In determining whether this standard is met, the evidence must be viewed in the light most favorable to the plaintiff. Id. at 255.

III. Discussion

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires inmates to exhaust administrative remedies before seeking relief in federal court for all "inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v.

Nussle, 534 U.S. 516, 532 (2002).  Taking informal steps to put prison officials on notice "as to the nature of the wrong for which redress is sought" does not constitute proper exhaustion under the PLRA.  Macias v. Zenk, 495 F.3d 37, 44 (2d Cir. 2007).  "Section 1997e(a) requires 'proper exhaustion,' which 'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'"  Hernandez v. Coffey, 582 F.3d 303, 305 (2d Cir. 2009) (quoting Woodford v. Ngo, 548 U.S. 81, 90 (2006)).  Thus, "prisoners must complete the administrative review process in accordance with the applicable procedural rules - rules that are defined not by the PLRA, but by the prison grievance process itself."  Jones v. Bock, 549 U.S. 199, 218 (2007) (internal quotation marks and citation omitted).  Exhaustion may be excused when the plaintiff shows that: (1) administrative remedies were not in fact available; (2) prison officials have forfeited, or are estopped by their own actions from raising the affirmative defense of non-exhaustion; or (3) special circumstances justify the prisoner's failure to comply with administrative procedural requirements.  Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004).

Connecticut Department of Correction Administrative Directive 9.6 establishes the grievance procedure inmates must follow.  See Melendez v. Gomez, 3:06CV964 (WWE), 2010 WL 3034292, at *2 (D. Conn. July 28, 2010).  Directive 9.6 provides that a "grievance must be filed within 30 calendar days of the occurrence or discovery of the cause of the grievance."  Directive 9.6(6)(C).  An inmate must file a Level 1 grievance and appeal any unfavorable disposition to Level 2.  Id. at *3.[3]  Directive 9.6 defines a grievance as "a written complaint filed by an inmate on the inmate's own behalf in accordance with the procedures stated herein," Directive 9.6(3)(F), and directs that "the request for an administrative remedy and the action sought should be stated simply and coherently."  Directive 9.6(5)(E).

In Melendez, the plaintiff filed a grievance alleging excessive force.  He was informed that the grievance was procedurally deficient and had to be resubmitted.  2010 WL 3034292, at *3.  The plaintiff appealed stating that the disposition "failed to acknowledge his injuries and the

---

[3] "Level 2 is the final level of appeal for all grievances except appeals that challenge departmental policies; appeals of emergency grievances which cannot be acted upon at a lower level; appeals challenging the integrity of the grievance procedure; and appeals for which a timely response to a Level 2 grievance has not been received."  Melendez, 2010 WL 3034292, at *3.

9

seriousness of the damage."  He was again informed that his initial grievance was procedurally deficient and had to be resubmitted.  Id.  The plaintiff subsequently submitted a proper Level 1 grievance, which was denied on the merits. Id.  Instead of appealing this decision to Level 2, the plaintiff filed a lawsuit seeking damages for excessive force.  Id.  The Court ruled that "plaintiff did not exhaust his administrative remedies because . . . [the] grievance was not fully addressed on the merits by an administrative appeal."  Id. at 4.

Similarly here, plaintiff's grievance was determined to be deficient because it was "vague in the action requested." It is undisputed that plaintiff chose to file this suit rather than submit another grievance.  As a result of plaintiff's decision to forego filing a second grievance, the merits of his grievance based on the assault have not been addressed administratively.  Thus, as in Melendez, the record establishes that the plaintiff failed to exhaust available administrative remedies before filing this suit.

The issue is whether plaintiff's failure to exhaust should be excused.  Plaintiff argues that it should be. With regard to the exceptions set forth in Hemphill, he does

10

not claim that administrative remedies were unavailable, that he was deterred from filing another grievance by threats or other inhibiting conduct, or that he relied on the check mark in the box on the form stating, "You have exhausted the Department's Administrative Remedies."  Nor does he contend that his refusal to file a second grievance was justified by a reasonable interpretation of prison grievance regulations.  See Hemphill, 380 F.3d at 690 (citing Giano v. Goord, 380 F.3d 670 (2d Cir. 2004)).  Rather, he argues that he "didn't file a second grievance due to the fact [he] fulfilled [his] obligation pertaining to the standards set out in the PLRA, despite the level II assessment stating it is vague or [DA Choinski's] efforts to sabotage my efforts."  Pl.'s Rule 56(a)(2) Statement ¶ 35.  Plaintiff states that he mentioned the Freedom of Information Act request in his Level 1 grievance only "to avoid any problems relating to processing the grievance due to not providing the names of the officer[s] who were working the day of the attack"; that "[t]he level one grievance reviewer understood clearly the nature of plaintiff's complaint"; and that "plaintiff's level II

11

grievance was straightforward." Pl.'s Br. in Opp'n to Summ. J. (ECF No. 55-1) at 8-9.

Plaintiff's disagreement with Choinski's disposition of the grievance does not justify his failure to exhaust administrative remedies. Plaintiff justifiably believed that his intention to file a grievance regarding the staff's failure to protect him from the assault was sufficiently clear. Even so, the grievance was "vague in the action requested," as Choinski stated at the time. The Level 1 grievance stated that plaintiff was having difficulty getting incident reports concerning the assault; the Level 2 appeal stated that his safety and security were still at risk. In response to those statements, Choinski informed the plaintiff that reports of the assault had become available and authorized him to "submit a new grievance outlining the problem and the requested resolution." Choinski's action was objectively reasonable.

Plaintiff's suggestion that Choinski tried to "sabotage" his efforts is not sufficiently supported to justify his failure to file another grievance. Choinski's disposition of the grievance authorized the plaintiff to file a new grievance based on the assault in light of the

12

records plaintiff had requested, which were not available when plaintiff filed the initial grievance at the deadline. On its face, Choinski's action reflects good faith and facilitated a process consistent with the purpose of the PLRA's exhaustion requirement. Plaintiff points to no evidence justifying his reference to "sabotage."

Construing the pro se plaintiff's submissions liberally, they do not raise a triable issue of fact with regard to whether the plaintiff satisfied the PLRA's exhaustion requirement. Because the record establishes that plaintiff failed to exhaust available administrative remedies prior to commencing this action, and the circumstances shown by the record do not justify his failure to exhaust, the defendants are entitled to summary judgment under the PLRA.[4]

---

[4] Defendants contend that summary judgment is appropriate on the merits because plaintiff has failed to establish that his Eighth Amendment rights were violated and they are entitled to qualified immunity. The defendants' arguments appear to be well-supported. However, the Court does not address them in detail because defendants prevail on their affirmative defense that plaintiff failed to exhaust administrative remedies as required by the PLRA.

IV. <u>Conclusion</u>

    Accordingly, defendants' motion for summary judgment (ECF No. 54) is hereby granted.  The Clerk will enter judgment in favor of the defendants dismissing the action without prejudice.  Plaintiff may file a new action if he is able to demonstrate that he has exhausted administrative remedies as required by the PLRA.

    So ordered this 31st day of October 2013.

                                                /s/RNC
                                       Robert N. Chatigny
                                United States District Judge